SANTA CLARA VAL. MILL & LUMBER CO. v. PRESCOTT.

(Circuit Court of Appeals, Ninth Circuit.   May 14, 1900.)

No. 577.

1. PATENTS—CONSTRUCTION OF CLAIMS.

A claim is to be construed in accordance with the language in which it is expressed, unaided by the drawings and specification, or it is to be narrowed to the construction shown in the drawings and specification. It cannot be enlarged by reading into it as an element a particular feature of the construction as shown in the drawings, while other features are treated as nonessential.

2. SAME—INFRINGEMENT—BAND-SAW MILL.

The Prescott patent, No. 369,881, for a band-saw mill, if conceded to involve invention which will sustain its validity, is limited by the prior art to the precise construction shown in the drawings and specification, and, as so limited, it is not infringed by a mill constructed in accordance with the Wilkin patent.

Appeal from the Circuit Court of the United States for the Northern District of California.

D. W. Burchard, W. F. Booth, and William W. Dodge, for appellant. Lewis K. Gillson and John H. Miller, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge.   The appeal in this case is taken from an interlocutory decree of the circuit court adjudging that letters patent No. 369,881, granted to De Witt Clinton Prescott, of date September 13, 1887, for band-saw mill, are valid as to claim 1, and that the appellant has infringed the said claim, and ordering that he be

enjoined from further infringing. The improvement for which the letters patent were given refers to a band-saw mill, or a mill of which the essential parts are a frame in which are mounted an upper and a lower band wheel on horizontal shafts, one of which is adjustable towards and from the other, and around which wheels passes a saw blade in the form of an endless belt having teeth on one or both edges, and means for imparting a rotary motion to one of the shafts. The purpose of making one of the shafts adjustable is to permit the saw blade to be readily placed upon and removed from the wheels, and to draw the saw blade taut by a separation of the wheels so that the blade shall be kept under a strain sufficient to prevent slipping, bucking, or vibration. The appellee's mill consists of an upright, cylindrical column in the base of which is mounted the lower band wheel, and upon the upper part of which is surmounted an outer cylinder which has a vertical movement upon the inner cylinder, and is lifted and lowered by a jackscrew. The outer and upper cylinder carries bearings and boxes in which are mounted the ends of the upper band-wheel shaft. Aside from the adjustment obtained by the jackscrew, there is automatic adjustment of the upper band wheel, its shaft and boxes, whereby a proper tension of the saw is secured at all times. The portions of the mill which are involved in the present controversy may be thus described with reference to the drawings: Upon the vertical column, b, is mounted and arranged to slide vertically an encircling head or section, $b^1$, sustained, raised, and lowered by a jackscrew, $b^3$. The vertically movable section carries brackets, D, E, in which are fulcrummed two levers of the second order, the ends of which are united by a pin or bolt, from which a rod, J, rises to one end of the lever, K, of the first order, fulcrummed in the movable head or section, and having a weight, N, suspended from its other end. Above the brackets, D, E, are tubular guides, one of which is an upward extension of bracket, D, and the other is cast upon the side of the movable section, $b^1$. In these guides are mounted slides or stems, $g^2$ and $g^3$, of forked bearing boxes, G and $G^1$, in which forked bearing boxes are pivoted boxes, $f^1$, $f^1$, in which are mounted the opposite ends of an upper band-wheel shaft, f. Rods or stems, h and i, extend from the lower ends of the slides or guiding stems, $g^2$ and $g^3$, of yoked bearing blocks, G, $G^1$, to the levers, H, I; rod h being pointed where it bears upon the lever, H, and rod i being pin-jointed to lever I. Rod i is made in two parts, threaded right and left, and connected by a sleeve or nut similarly threaded, whereby it may be lengthened or shortened to raise or lower the rear end of the upper band-wheel shaft without materially affecting the front end. The weight, N, acting through the lever, K, draws upward the connected ends of levers H and I, thereby lifting the rods, h, i, the slides, $g^2$, $g^3$, the yoked bearing blocks, G, $G^1$, and the boxes, $f^1$, $f^1$, the upper band-wheel shaft, f, and the band wheel F. In the specifications it was stated that the object of the invention was to "provide for adjusting the upper band wheel," and that the inventor was aware "that the lower band wheel in mills of this type has been made adjustable automatically for the purpose of taking up slack."

He pointed out an objection to that mode of adjustment, and thus concluded the description of his invention:

"I do not wish to be understood as limiting my invention to the precise devices which are herein shown and described. The upper band-wheel shaft may be made automatically adjustable by other devices, and, as this is the main characteristic of my invention, I claim it broadly."

It is shown by the record that as a matter of fact but one mill had been patented prior to the appellee's in which the lower wheel was made adjustable. Numerous patents had been taken out, however, in which an automatic adjustment was made of the upper wheel. Of this fact the inventor seems to have been unaware. His first claim, as his application was originally presented, read as follows:

"(1) In a band-saw mill, the upper band-wheel shaft, in combination with the vertically movable bearings in which said shaft is mounted, and automatic adjusting mechanism applied to the bearings of said shaft, substantially as and for the purposes specified."

He received notice from the examiner of the patent office that his claim 1 did not distinguish his device from that shown in patent No. 332,365, to S. Stephens, December 15, 1885, and in No. 170,577, to W. C. Margedant, November 30, 1875, band-saw mills. Both these patents so referred to show an upper band-wheel shaft in combination with vertically movable bearings in which the shaft is mounted, and an automatic adjusting mechanism applied to the bearings. Prescott thereupon amended his first claim to read as follows:

"(1) In a band-saw mill, the upper band-wheel shaft, in combination with independent vertically movable bearings in which the ends of said shaft are separately mounted, and automatic adjusting mechanism applied to each of the bearings of said shaft, substantially as and for the purposes specified."

It will be observed that the manual adjustment of the upper band wheel by means of the jackscrew is not included in the claim, or referred to therein.

The question arises, what is the peculiarity of construction which is intended to be pointed out by the amendment? What is meant by the terms "independent vertically movable bearings?" A meaning which might be suggested is that the bearings move vertically, the one independently of the other. But that such is not the meaning of the patentee is obvious upon the most casual observation of the patent. It is clearly seen that the levers which support the stems upon which the bearings are mounted are pivoted together, and that a common weight operates upon both, and that one of the bearings cannot be raised or lowered without a corresponding and simultaneous movement of the other. The appellee, in his specifications, pointed out this fact:

"It is obvious that any vibration of the lever, K, will cause a vibration of the levers H and I, and consequently a simultaneous adjustment of the two bearing blocks of the upper band-wheel shaft in a vertical direction."

Neither in the claim as amended nor in the specifications is the term "independent," as it is there used, defined. The appellee, in his deposition, which was taken in rebuttal, says, in explanation of

it, that the expression "independent vertically movable bearings" means that the "bearing boxes alone are vertically movable, and that they are detached and independent of the arms, brackets, yokes, or fixed supports of which they hitherto formed a part, and that to said bearings by themselves alone are applied the automatic adjusting mechanism substantially as specified. And, moreover, that the mechanical elements found in claim 1 are independent of all other portions of the movable upper portion of the band-saw mill patented to him and in suit, except as they are supplemental and are combined therewith." Conceding that this is the true meaning of claim 1, and that there should be read into the claim, in explanation thereof, that the bearing boxes alone are vertically movable, and that they are detached and independent from the yokes or fixed supports which in other band-saw mills sustain the bearings, it becomes necessary to inquire how the claim is affected by the condition of the prior art. But first it is to be noted that the language so quoted from the appellee's deposition manifestly does not precisely describe the relation of the movable bearings to the supports on which they rest. It is not literally true that the bearing boxes alone are vertically movable, or that they are detached from the arms which support them. The movable bearings are integral with rods which support them, and the rods rest upon levers which are pinned together, and are operated by a weight which secures the automatic adjustment. Stripped of the hollow sleeves whereby the rods which support the bearings are held in alignment, and in which they vertically move, the appellee's device is identical with that of B. D. Whitney, patented July 13, 1875 (No. 165,463). But among the numerous band-saw mills which preceded the appellee's invention are at least two in which are found all the elements of the appellee's first claim after reading into it his own explanation of the terms "independent vertically movable bearings." On August 14, 1877, letters patent No. 194,225 were issued to William H. Doane and George W. Bugbee for an improvement in band-saw mills in which the axle of the upper wheel is supported upon bearings upon either side thereof, and in which the bearings are independently vertically movable. Upon the one side the bearing is attached to a stem, which vertically moves in a sleeve, and rests upon a spring at the base. The other bearing is connected with a stem which is guided by a sleeve, and rests upon a lever. By means of the lever and the spring automatic adjustment is secured. The German patent No. 28,833, granted to Krumrein and Katz, of date March 8, 1884, exhibits independent vertically movable bearings upon either side of the upper wheel automatically adjusted by means of rods which rest upon a doubled forked weight lever. It meets all of the requirements of the appellee's claim as the claim reads and as it is interpreted by the appellee. There is a difference, however, in the fact that in the German patent the points of support of the movable bearings are not in vertical lines passing through the same, but are removed to one side thereof,—a difference which will be alluded to hereafter. Belonging to the prior art are found also numerous

devices for automatically adjusting belt pulleys which operate in the same manner and are used for the same purpose as the devices for automatically adjusting the upper band-saw wheel, which is, in a sense, a belt pulley, the band saw being the belt. Such a device for tightening a belt pulley was patented to J. J. Squire on May 4, 1875 (letters patent No. 162,867). His belt-pulley shaft is mounted upon bearings at either end. The bearings are placed upon stems which move vertically in fixed sleeves which support them and rest upon levers which are operated by a weight whereby the shaft is moved equally at all parts of its length to force the wheel firmly against the belt, and hold it taut. It is said that the Krumrein and Katz invention does not anticipate the device which is covered by the appellee's claim for the reason that the pressure upon the lever which carries the weight is not in the vertical line of the axes of the shaft wheel, but at one side thereof. In order to maintain a distinction based upon this difference, it is argued that the appellee's claim must be construed in the light of the device which was described in the drawings and specifications, and that by virtue of the concluding sentence of the claim, "substantially as and for the purposes specified," there is imported into the claim as one of its elements that the point of support of each bearing shall be in a vertical line passing therethrough, since such is the form so described and exhibited. It may be said in answer to this that there is nothing in the drawings or specifications to indicate that the inventor considered one of the elements of his claim to be the location of the points of support of the movable bearings in a vertical line beneath the same, and no intimation of such meaning is therein given to the public. On the contrary, it clearly appears that it was not his intention so to limit his claim. He believed himself to be the inventor of the combination which he specifically described in his claim. He said:

"I do not wish to be understood as limiting my invention to the precise devices which are herein shown and described. The upper band-wheel shaft may be made automatically adjustable by other devices, and, as this is the main characteristic of my invention, I claim it broadly."

There can be no doubt that an automatic adjustment such as that described in the German patent of Krumrein and Katz and that described in the Bugbee and Doane patent, if made subsequent to the appellee's invention, instead of prior thereto, would have been infringements of the latter, for they contain all the elements of the appellee's claim as the same is written. One who might have used the German device under those circumstances would not have been permitted to defend against infringement upon the ground that he had placed the point of support of the movable bearings at one side of, instead of in a vertical line beneath, the same. The object of the claim in a patent is to publish to the world the precise nature of the invention which the patentee seeks to protect. He cannot demand that there shall be imported into it an element which is not there distinctly stated or necessarily implied. What was there in the appellee's patent to apprise Wilkin, who invented the mill which was

used by the appellant, that one of the elements of the appellee's claim was the location of the point of support in a vertical line beneath the movable bearings? Upon what theory is the appellee to be permitted to select one from the various features of his device as the same is presented in the drawings and specifications, and to say that that, and not some other, is an element of his combination? Either the claim is to be construed in accordance with the language in which it is expressed, unaided by the drawings and specifications, or it is to be circumscribed by the drawings and specifications. If the latter, then it is to be narrowed to the construction which is so set forth, and not to any one specified portion thereof. We are not at liberty to say that the location of the point of support of the movable bearings is a portion of the claim, and that the form of the levers and the construction of the fixed supports and their relation to one another are not. By examining the prior art, Wilkin could see what Krumrein and Katz had invented, and what the Bugbee and Doane device was. He was authorized to assume that, in view of the prior art, the appellee, if his device was indeed sufficiently novel to admit of protection as an invention, must be limited to the precise form in which his drawings and specifications exhibited it. We think that this is the most that can be claimed for the appellee's patent. It may be that the location of the points of support in a line vertically passing through the center of the bearings is an important feature in both the Prescott and the Wilkin patents, and that it materially contributes to the sensitiveness of the automatic adjustment of both. But, if it be true, there is nothing in the appellee's patent to show that the appellee was aware of that fact, or that he deemed it an element of his combination. Concerning the sources of the sensitiveness of his invention, the only information afforded us is that it results from the separation of the independent movable bearings from the fixed sleeves which support the same, and the consequent reduction of the weight of the parts which are sustained by the weighted lever. No suggestion of any other explanation or contributing cause is found in the evidence of the appellee or in that of his experts. As it was said in Fastener Co. v. Kraetzer, 150 U. S. 116, 14 Sup. Ct. 49, 37 L. Ed. 1021:

"If this feature be an advantage, as now claimed, it is strange that no allusion is made to it in the specifications."

In Railroad Co. v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 642, the court said:

"In view, therefore, of the statute, the practice of the patent office, and the decisions of this court, we think that the scope of letters patent should be limited to the invention covered by the claim, and that, though the claim may be illustrated, it cannot be enlarged, by the language used in other parts of the specification."

In White v. Dunbar, 119 U. S. 47, 52, 7 Sup. Ct. 74, 30 L. Ed. 305, Mr. Justice Bradley said:

"The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms."

In Manufacturing Co. v. Greenleaf, 117 U. S. 554, 558, 6 Sup. Ct. 848, 29 L. Ed. 953, the court said:

"We think this difference between the two locks does not give validity to the Rosner patent, for two reasons: First, because the shape and size of the keyhole is not mentioned in the claim of the Rosner patent as one of the elements of the combination. The scope of letters patent must be limited to the invention covered by the claim, and, while the claim may be illustrated, it cannot be enlarged, by language used in other parts of the specification."

But we think that, in any view of the language of the claim, the prior art was such as necessarily to limit the appellee to the specified form shown in his drawings and specifications. In the Doane and Bugbee patent the point of support of the movable bearings is in a line passing vertically therethrough, and the force of this fact is not affected by the unequal distribution of the strain upon the two ends of the band-wheel shaft. The fact that the device is so constructed that the greater portion of the weight is sustained upon one of the bearings, instead of being placed equally upon both, is unimportant. If it be admitted that the appellee's invention is to be protected in the precise form which is shown by his drawings and specifications, we think that the Wilkin mill, which was used by the appellant, sufficiently diverges therefrom to avoid infringement. The Wilkin mill, instead of being constructed with a single column in which the weight and the lever system are contained, has two distinct columns, widely separated, and carries the lever system and the weight below the columns. There are differences in the order and adjustment of the levers which are unimportant to be considered. Taking it altogether, we think it differs from the appellee's mill more than the latter differs from the devices of Doane and Bugbee and of Krumrein and Katz. The circuit court expressed doubt whether, in view of the prior art, the appellee's patent involved invention, but sustained the patent upon considerations suggested by the decision of the supreme court in the Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, 161, where it was said that the courts incline to sustain a patent to the man who takes the final step in the invention, which turns failure into success. We think, however, that the rule of that decision should be applied in this case to the specific form which the appellee devised. The field of his invention was necessarily limited thereto by what had preceded him. The decree of the circuit court is reversed, and the cause remanded, with instructions to dismiss the bill.