CANDA BROS. v. MICHIGAN MALLEABLE IRON CO.

(Circuit Court, E. D. Michigan, S. D.    July 14, 1902.)

No. 3,674.

1. PATENTS—CONSTRUCTION OF CLAIMS.

While an element may be implied and read into a claim of a patent, when necessary, for the purpose of proving that the device is an operative one, it cannot for the purpose of making out a case of novelty or infringement.

2. SAME—INFRINGEMENT—DRAWBARS.

The Canda patent, No. 460,426, for a drawbar and spring for railroad cars, claims 1, 2, and 7, cover combinations of elements all of which were used in prior devices to perform the same functions, and are of doubtful validity. If they can be accorded patentable novelty, they must be restricted to the precise construction shown. As so construed, they are not infringed by the device of the Thornburg patent, No. 588,722.

In Equity. Suit for infringement of letters patent No. 460,426, for a drawbar and spring, granted September 29, 1891, to Ferdinand E. Canda. On final hearing.

Parker & Burton and E. M. Marble, for complainants.

W. H. Singleton, for defendant.

SWAN, District Judge. The defendant is charged with having infringed claims 1, 2, and 7 of letters patent, granted Ferdinand E. Canda September 29, 1891, No. 460,426, for improvement in drawbar and spring. The infringement charged is based upon the manufacture by defendant, under contract with the Thornburg Coupler Attachment Company, Limited, of draft apparatus shown in letters patent No. 588,722, granted to William Thornburg August 24, 1897.

The claims of plaintiffs' patent in issue are as follows:

"(1) In a drawbar attachment for railroad cars, a spring casing formed integrally with a single casting having a closed top and an open bottom and constructed for attachment to the longitudinal draft timbers, substantially as herein shown and described.

"(2) In a drawbar attachment for railroad cars, the combination, with the draft timbers, of a spring casing permanently attached to the timbers and provided with a removable bottom plate extending the entire length of the casing and locked to the sides of the casing, substantially as specified."

"(7) In a drawbar attachment for railroad cars, a spring casing adapted to be permanently attached to the draft timbers and provided with one or more removable plates that lock with the sides of the casing, substantially as and for the purpose herein shown and described."

The chief defenses pleaded are noninfringement and want of patentability.

A preliminary objection to the right of the plaintiffs to recover is based upon the language of the assignment of letters patent by Ferdinand E. Canda, the inventor, to Canda Bros., the complainants herein. It is claimed that it does not appear from the instrument that the entire interest in the patent is held by complainants, nor that the entire ownership is represented in the suit. It has not been found necessary to consider the objection. The controversy must be decided upon the main issues in the case.

The history of the art shows innumerable devices, termed, indifferently, "improvements in drawbars," "drawbar attachments," "car couplings," "improvements in car couplings," "drawheads and bumpers on railroad cars," "draft and buffing apparatus for cars," etc. In all of these the prominent features are a box casing or spring cage, as it is called, into or through which a drawbar rod connected with spiral springs is moved longitudinally by the contact of the cars, or, when they are coupled together, by their traction. The springs, metallic or rubber, inclosed in the casing, are compressed and relaxed by the movement of the drawbar, and serve to ease the effect of the contact or traction of the cars upon the drawbar and its connections, and also aid to conform their movements to the curves and conditions of the track when the cars are in motion. The casings or boxes in which are placed the springs and follower of the drawbar have been constructed integrally or in parts, which are fastened together and then attached to the longitudinal draft timbers or sills of the cars, as each inventor preferred.

The Canda file wrapper, which is made an exhibit in the case by the defendant, shows that in the patentee's first application claim 1 was set forth in the following language:

"(1) In a drawbar attachment for railroad cars, a spring casing formed integrally with a single casting, substantially as specified."

This claim was rejected in the Patent Office, on the ground that it was anticipated by letters patent to Schaaber, No. 115,986, June 13, 1871. Thereupon the claim was amended, by inserting, after the word "casting" therein, the words, "and constructed for attachment to the longitudinal draft timbers." Thus amended, the claim was again rejected on letters patent to McGuire, No. 437,227, issued September 30, 1890. Thereupon Canda again amended the claim, by inserting, after the word "casting," the words, "having a closed top and an open bottom," and followed this with the words of the first amendment, "and constructed for attachment," etc. Thus amended, the claim was allowed, and constitutes claim 1 of the patent.

It will thus be seen that the only feature which seemed to the Patent Office to distinguish the claim, after the first amendment, from preceding constructions, were the words, "having a closed top and an open bottom"; Gillam's letters patent No. 135,984, issued February 18, 1873, disclaimed the box and the spring as well-known features of this class of mechanism. Reference to Schaaber's device, No. 115,986, dated June 13, 1871, shows a spring box and housing, which, instead of being formed of cheek pieces secured together and to the under side of the car, as was then usual, was cast in one piece and secured to the under side of the cross-sills of the car. The unitary construction of the casing was, therefore, anticipated by Schaaber.

McGuire's patent, No. 437,227, dated September 30, 1890, had adopted the feature of attaching the casing or spring box to the draft timbers. Whatever of value is found in claim 1, either to distinguish the device it describes from prior constructions, or to make patentable Canda's casing, must inhere in the words, "having a closed top and an open bottom." This element was not new, separately or in combination. A similar structure is disclosed in letters patent to Hardy, No. 459,041, dated September 8, 1891. Hardy's case has a closed top and an open bottom, and was secured between the draft timbers of the car. It had a top plate with downwardly extending side walls, and was open at the bottom. To hold the follower plate and spring in position, the under side of this spring box or casing had a bottom plate secured to the draft timbers, sustaining the cushion or spring. This is exactly the construction of claim 1 of the Canda device—if that claim is for an operative device, of which hereafter; for, although it is described as having an open bottom, it is conceded that a bottom plate is necessary to retain the spring and the tail of the drawbar in position.

United States letters patent No. 104,704, to Carll & Shute, dated June 28, 1870, also show a cast-iron box, or casing, cast in one piece, with top plate and vertical side plates and an open bottom; this construction securing all the advantages claimed for the casing used by Canda. It demonstrates that the idea of casting the entire casing with top and side plates in one piece was old in the art long before the issue of the Canda patent.

The only feature which differentiates Miller's casing (letters patent No. 61,553, January 29, 1867) from exact parallelism with Canda's

casing, is that it was bolted to the car with the open side uppermost.

Letters patent No. 164,113, to Stephen Ustick, dated June 18, 1875, shows also a unitary casing of the same general construction as Canda's, and having the separate bottom plate such as Canda uses, but does not make an element of claim 1. This facilitated inspection of and access to the apparatus in the spring box or casing.

Letters patent No. 369,774, to F. Peteler, dated September 13, 1887, cover a cast-iron house or casing, in one piece, adapted to receive the rear end of the drop or follower plates and the spring between them. This construction is a plain anticipation of the Canda three-sided casing, and was made to be attached to the longitudinal timbers of the truck frame.

Letters patent No. 382,840, to C. H. Starr, dated May 15, 1888, show a cast-iron casing for the draft connections, formed in one piece, having vertical side walls joined by a top plate, the construction being of the U form in cross-section, to open at the bottom. It is there called a "drawspring cage," and was bolted to the under side of the car sill.

Similar constructions are shown in patent No. 417,786, to Hughes, dated December 24, 1889, and patent No. 406,305, to W. A. Post, dated July 2, 1889. Butler's letters patent No. 213,974, issued April 8, 1879, possesses all the features of Canda's claim 1, except the integral casing which Butler made in two parts.

It is also evident, from the specifications of the Canda patent, that a casing cast in one piece and a casing built up of three pieces is an alternative construction. Canda's patent states (specifications, page 1, lines 52 to 60):

"In some cases I find it advantageous to make the side pieces separate, and apply top and bottom plates, as shown in Fig. 3. The interlocking of the plates and side stops and the supporting vertical bolts impart to the case nearly as much strength as it would have if constructed of one single piece of metal, and without occasioning any undue strain."

Speaking of the Ustick patent, Mr. Soule, one of defendant's experts, testified:

"It would appear, however, that it [Ustick's construction] is a form of box or casing with top, sides, and back end formed integrally, and its front end open; and also that it is fitted with a removable bottom plate."

This describes fairly defendant's structure. Ustick's differs from Canda's only in that Canda's has no back end "integral with the top and sides." Soule's opinion that Ustick's "completely fails to meet the requirements of claim 1 of the Canda patent, in that it is not constructed for attachment to the longitudinal timbers of the car," states no patentable difference between Canda's casing and that of Ustick. It required no invention to attach the spring casing to the draft timbers. Butler's casing was thus placed in 1879. The great majority of casings of different inventors were attached to the draft timbers. In fact, all of the advantages claimed for Canda's spring casing are found singly or in parts in previous devices. He admits in his testimony that when his specifications were prepared he did not know of the McGuire attachment, which was an improvement on the Butler drawbar attachment, and which he concedes would, in point of strength

and efficiency of service, be equal to the construction described in his own patent. The history of the art repels the validity of this claim.

Again, the necessary construction of the language of claim 1 excludes a device having a bottom, and the structure there claimed shows nothing to sustain the contents of the casing. It is admitted by Canda that the bottom plate is essential to the operativeness of the structure. To meet the objection, complainants insist that the bottom plate must be implied and read into the first claim for the purpose of sustaining it. This is not permissible. "While it may be done with a view of showing the connection in which the device is used, and proving that it is an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement." McCarty v. Lehigh Valley Ry. Co., 160 U. S. 110–116, 16 Sup. Ct. 240, 40 L. Ed. 358; F. R. Stearns Co. v. Russell, 85 Fed. 218–224, 29 C. C. A. 121; Santa Clara Co. v. Prescott, 102 Fed. 501, 42 C. C. A. 477.

Nor can the first claim be aided by the fact that claims 2 and 7 expressly include as an element a removable bottom plate, or bottom plates. This feature of construction in the latter claims cannot be read into claim 1. Wilson v. McCormick Harvesting Co., 92 Fed. 167, 34 C. C. A. 280.

The second and seventh claims, which have been quoted supra, are, like the rest of Canda's claims, mere variations of previous devices. The second claim differs from the first, in that it does not call for "a spring casing formed integrally having * * * an open bottom," but is satisfied by any form or construction of casing having the designated bottom plate locked as specified. This claim originally read as follows:

"In a drawbar attachment for railroad cars, the combination, with the draft timbers, of a spring casing permanently attached to the timbers and provided with a removable bottom plate, substantially as specified."

This was rejected on letters patent to Cushing, No. 412,843, dated October 15, 1889. Canda amended it by adding, after the words "bottom plate," "extending the entire length of the casing and locked to the sides of the casing," "substantially as specified." Every element of the combination is found in prior constructions in the like relation to every other part, and serves the same purpose in the same manner, with the possible exception of the interlocking feature introduced by this amendment. The extension of a removable bottom plate "the entire length of the casing and locked to the sides of the casing" added to the casing nothing new in the art, in the absence of some patentable interlocking device; for a removable bottom plate was the feature of prior constructions. All bottom plates are "removable," unless the casing be cast or formed integrally. Whether it extended the whole length of the casing, or only so far as was necessary to sustain the contents of the casing—which was its only purpose—was merely a matter of preferential construction. The interlocking element of this claim is designed to relieve the vertical bolts, securing the bottom plate to the side plates, from shearing strain. Canda's construction necessitates such relief, and therefore the interlocking feature was

added. Knight, complainants' expert, admits that this method of relieving the strain on vertical bolts is a familiar mechanical expedient. The claim, being for a combination, is conclusive acknowledgment that its parts are not original. St. Louis Car C. Co. v. National Mall. Co., 87 Fed. 885, 31 C. C. A. 265.

The only locking described in the patent is that effected by the reciprocal relations of the recesses of the bottom plate and the studs of the side plates, which, when the bottom is in place, extend downward into said recesses. As has been said, the principal function of the bottom plate in devices of this class is to uphold the contents of the spring casing and permit them to be dropped out of the bottom when required. Incidentally it stiffens the sides of the casing, when in place; but the same is true of every bottom plate in all the constructions which the art shows when attached to the side plates of the casing. The plates or bars on the under side of the old structure, "Defendant's Exhibit, Strap Drawbar Construction," answered the purpose of sustaining the parts in the case, and permitted them to be dropped out at the bottom, with equal facility. This is also shown, for example, in the patent to Hardy, No. 459,041, in the patent to Brown, No. 363, 112, and in that to Marston, No. 248,940, all of which, not to mention many others, have the same means substantially for the removal of the inclosed parts and their connections.

Not only, however, is there an entire absence of patentable merit in the combination set forth in claim 2, but the defendant's bottom plate does not interlock with the side plates of the casing. It is seated loosely between the side plates of the casing, and sustained by horizontal cross-bolts, which serve as ties to bind the parts together transversely. It is of skeleton form, and hung on a hinged pin or bolt, so that it is only necessary to change its position, by the removal of the cross-bolts, and allow it to drop down to a pendent position, in order to permit the dropping and removal of the parts in the casing. It does not aid to resist transverse strain on the casing. This is met only by the cross-bolts. In the Canda construction the plate is held to the casing by vertical bolts, which must be disconnected in order to remove the bottom plate for the inspection or removal of the parts. Whether this interlocking feature makes the combination patentable or not is, however, really immaterial; for it is not found in the defendant's structure. Its absence alone defeats the charge of infringement of the combination.

Claim 7 seems to differ from claim 2, in that the spring casing in the former has one or more "removable plates that lock with the sides of the casing." There is nothing whatever in the specifications or drawings suggestive or descriptive of a bottom plate in two or more pieces, or of the manner or application of two removable plates. If this is to be considered as covering any removable plates with any fixed relation with the side plates, the construction is displayed in "Defendant's Exhibit, Strap Drawbar," in Hardy patent, No. 459,041, in the Brown patent, No. 363,112, and the Post patent, No. 406,305. A recess in the plates to interlock with the sides is the only means of locking described, illustrated, or suggested in the patent; and, as has been said, nothing of that character or for that purpose is found in defend-

ant's structure. In brief, the seventh claim is only distinguishable from the second by its failure to limit the number of bottom plates or their extent.

A careful examination of the record in this case, and of the claims alleged to have been infringed, is persuasive that their novelty is, in view of the prior art, more than questionable. If they can be accorded any patentable merit, they must be restricted to the precise form which they present, and, thus construed, they are not infringed by the defendant's construction. St. Louis Car C. Co. v. National Mall. C. Co., 87 Fed. 885, 31 C. C. A. 265.

The history of the art presents innumerable examples of this class of mechanism so nearly identical with those here involved that the selection of the elements of a patentable combination from prior devices in this field has become as difficult as the production of original mechanism which would owe nothing to prior inventors. Perhaps the later constructions exhibit more mechanical skill and improved reinforcement of those parts of the apparatus most subjected to strain and injury by concussion; but these advantages are but matters of degree, not of inventive capacity and merit. The art has conserved the generic features of the early devices. The changes introduced of late years in the arrangement of the parts, or the manner of attachment of the casing to the timbers of the car, and relative positions of the drawbar and springs, and other parts of the various devices, are, in the main, modal merely, and have not the essence of invention.

The bill must be dismissed, with costs.