C. & A. POTTS & CO. v. CREAGER et al.

(Circuit Court of Appeals, Sixth Circuit. October 23, 1899.)

No. 625.

1. PATENTS—ANTICIPATION—CLAY DISINTEGRATOR.

The Potts patent, No. 322,393, for a clay disintegrator, which consists of a rotating cylinder carrying cutting bars fixed in longitudinal grooves, and projecting beyond the surface of the cylinder, acting in combination with a vibratory plate mounted on a shaft opposite the cylinder, and moved automatically towards the cylinder in operation, so as to continue to press the clay against it as the successive portions are cut away by the cutting bars, was not anticipated by anything in the prior art, and is valid; also *held* infringed as to claim 6.

2. SAME—IMPROVEMENT ON PRIOR DEVICE—INVENTION.

The Potts patent, No. 368,898, for an improvement on the machine shown in patent No. 322,393, to the same patentees, for a clay disintegrator, the improvement consisting of the substitution of a smooth roller for the vibratory plate shown in the older patent, does not disclose patentable invention, and is void.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This is an appeal from a decree dismissing a bill for the infringement of a patent. The case has a somewhat peculiar history. The complainant, Potts & Co., an Indiana corporation, filed its bill against the firm of Jonathan Creager's Sons, of Cincinnati, to restrain the infringement of patent No. 322,393, issued July 14, 1885, to Clayton Potts and Albert Potts, for a clay disintegrator; and also of a patent issued August 23, 1887, to the same inventors, for an improvement upon the prior patent. Issues were made up by the filing of an answer and replication, and the circuit court, after a hearing upon the merits, dismissed the bill. 44 Fed. 680. The plaintiff then appealed to the supreme court, and that court, after a full hearing, found the patent to be valid, found the defendants to have infringed it, reversed the decree of the circuit court, and directed a decree for the complainant. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194. Upon the coming down of the mandate, and the entry of the interlocutory decree finding the issues for the complainant, and directing a reference, the defendants filed a petition for rehearing on the ground of newly-discovered evidence. The petition was allowed to be filed, and, after an examination of the evidence, the circuit court set aside the decree for the complainant, and entered a new decree, dismissing the bill. 71 Fed. 574; 77 Fed. 454. The complainant then had recourse to a proceeding in mandamus in the supreme court to compel the circuit court to comply with the decree of the supreme court. On this application the supreme court held that the action of the circuit court in setting aside the decree entered in accordance with the mandate was irregular and void; that a petition for rehearing in

such a case could properly be addressed only to the supreme court, or to the circuit court after leave had been obtained from the supreme court to file such a petition in the circuit court; and directed the writ to issue. Thereupon the circuit court restored the decree, which it had, without authority, set aside, and the defendants applied to the supreme court for leave to file a petition for rehearing on the same ground already irregularly presented to the circuit court. Leave was granted. A petition for rehearing was filed in the circuit court, and the circuit court, Judge Sage presiding, upon a rehearing, set aside the former decree, and again dismissed the bill. The present appeal is from the second decree dismissing the bill upon the petition for rehearing.

The substance of the two patents upon which the bill is founded is stated by Mr. Justice Brown, for the supreme court, in 155 U. S. 597, 15 Sup. Ct. 194, as follows: "In the first patent, No. 322,393, the patentees stated the object of their invention to be 'to disintegrate the clay by means of a revolving cylinder, which shall remove successive portions from a mass of clay which is automatically pressed against the cylinder.' This was accomplished by a cylinder containing a series of steel bars, fitted into longitudinal grooves in the periphery of the cylinder, where they were secured by flush screws at each end, by means of which they were adjusted, so as to present a sharp corner, projecting above the surface of the cylinder. Opposite the cylinder was a strong vibratory plate, mounted on a shaft, so as to swing in its bearings, by the aid of an eccentric wheel. The opposed sides of the cylinder and the upper and central portions of the plate formed a trough, one side of which approached and receded from the other at intervals, and which had at the bottom a narrow opening of constant width. In the operation of the machine, the plate was swung back, so as to leave as large an opening as possible, and the moist, untempered clay was thrown into the trough between the cylinder and the upper portion of the plate. By a rapid revolution of the cylinder, successive portions of the clay were removed from the mass, carried through the narrow opening by means of the scraping bars, and at the same time the upper portion of the plate moved slowly towards the cylinder; thus keeping the mass of clay in close contact with the cylinder, as successive portions were removed. The only claim alleged to be infringed was the sixth, which reads as follows: '(6) In a clay disintegrator, the combination with cylinder, A, having a series of longitudinal grooves, of the scraping bar, c, and adjustably secured in said grooves for the purpose specified.' In the second patent, No. 368,898, which was for an improvement upon the first, there was substituted in lieu of the swinging plate, shown by the first patent, as co-operating with the revolving cylinder, a plain cylinder set opposite the cutting cylinder, and revolving therewith in close proximity, so that the raw clay might be fed, shredded, and discharged in an even and continuous manner, in readiness to be taken directly to the pug or other mill. The patentees further stated in their specifications: 'The machine shown in our letters patent No. 322,393 was provided with a swinging or vibrating plate to co-act with the cutting cylinder in effecting the shredding of the clay which was fed between them. In such machine the abutting surface of the vibrating plate furnished a rest or bearing for the clay in presenting the same to the action of the cutter knives. This abutting surface was limited in extent and unchanging in position, so that it became rapidly worn. By substituting the revolving roll for the vibrating plate, this objection is greatly lessened. The roll constantly presents new surfaces to the cutters, so that the wear is even and regular throughout its circuit. If any inequalities exist in the roll at the outset, these become rapidly reduced, so that by use the cylinder wears more and more true, and acts thus with constantly better effect. Aside from cheapness in construction, the revolving roller or cylinder machine will work wet or sticky clays with perhaps one-third of the power necessary in treating such clays in the vibratory plate machine. Such plate tends constantly to crowd or squeeze the passing clays, whereas the revolving roll yields continuously, so that clogging is less apt to occur at the same time that the clay is finely and evenly shredded; the cutter cylinder moving, by preference, more rapidly than the companion feed roll, in order to accomplish this effect. Prior to our invention, it has been very common to employ, in clay mills, sugar mills, and the like, a set of rolls between which the material passed as the rolls were revolved; but in such machines the operation of the rolls was merely to break up the clogs of clay, and squeeze

or crush the same, whereas, by our invention, the clay is positively cut into fine shreds or clippings, in much better condition to be tempered and molded than by the old forms of disintegrating machines.'"

The following drawing illustrates the main features of the machine, so far as the same are material to the present case:

Defendants were charged with infringing the first and second claims of this patent, which read as follows:

"(1) In the supporting frame of a clay disintegrator, a rotating cylinder longitudinally grooved, and carrying cutting bars in and projecting beyond the grooves, in combination with a smooth-faced rotating cylinder adapted to carry and hold the clay against the cylinder having the cutting bars thereon, which latter cut or shred the clay, and pass the same between the cylinders, substantially as set forth.

"(2) In clay disintegrators, the combination, with the main supporting frame and with a rotating cylinder fixed therein, and having longitudinal cutting bars projecting beyond the face thereof, of a positively revolving companion cylinder fixed opposite thereto in said frame, and having a smooth face or surface, with which said cutting bars directly co-operate to shred or clip the clay, as the same is fed by and passed between said cylinders, substantially as described."

The art, and the relation of the inventions to the art, are described by Mr. Justice Brown as follows: "Beds of clay are composed of different strata; and the first step necessary to be taken in the manufacture of such clay is a thorough mixing of the strata, and the reduction of the clay to a suitable condition. Otherwise, the product will contain laminations, will shrink unevenly, and check in burning, scale or peel off in use, and be less valuable than products made of clays which are first thoroughly mixed and tempered, and reduced to a homogeneous mass, before being manufactured into the product. Prior to the Potts inventions, various methods seem to have been employed to secure this result. The clay had been sometimes spaded up in the autumn, subjected to the action of the frost during the winter, and then to the operation of the old-fashioned grinding pit. A mud wheel had also been used. The 'soak pit' was another means used to accomplish the same result; the clay being deposited in a pit of water, and allowed to remain until the soaking process had reduced it to the desired condition. These methods were slow and expensive. Both grinding machines and crushing rolls had been adopted in comparatively recent years. Their action was simply to crush the clay, the different strata being pressed together and made more compact, and the clay discharged from the rolls in cakes or sheets,—a condition that made the tempering very difficult, as the clay thus treated would not readily receive or absorb the water. The object of the Potts inventions was not to crush the clay as had been previously done, but to disintegrate and pulverize it, leaving it in a loose condition, fitted to absorb the water readily. Their machines consisted substantially of a cylinder moving at a high speed, having longitudinal bars fixed in its periphery with sharp projecting corners, and a fixed abutment in close proximity thereto,—in the first patent a swinging plate, in the

second a smooth cylinder,—and a positive feeding device, by which the clay was forced between the main cylinder and the abutment. The longitudinal bars thus operated to strike the mass of clay quick, sharp blows, in rapid succession, and cut or shred small portions therefrom, which were deposited beneath the machine, thoroughly mixed in their different strata, and with rough, torn, or ruptured edges,—a condition best adapted to receive or absorb water and be easily and thoroughly tempered."

Mr. Justice Brown in the opinion examined eight prior patents cited as anticipations of the Potts patent: One to Robert Butterworth, for an improvement in machines for grinding apples,—a cylinder with adjustable cutting knives or blades on its periphery, having serrated edges, and cutting or grinding the apples against a plate; one to Ennis, for a machine used in the preparation of paper pulp, and consisting of a revolving cylinder armed with longitudinal knives, and a stationary plate also armed with knives mounted beneath it in close proximity thereto; a patent to Frost, for a grinding cylinder for paper engines, and consisting of a skeleton cylinder armed with sharp cutting blades secured adjustably, so as to be moved out from the axis of the cylinder as they wear; a patent to Van Name, for a roller for grinding mills, provided with blades arranged in longitudinal grooves around the surface parallel with the axis, made alternately of hardened steel and soft iron, so that in use the soft material will wear more rapidly than the hard, and produce a corrugated roller; one to Peabody, for a cotton-seed huller, exhibiting a rotary cylinder armed with knives set in grooves, each having a chisel-shaped cutting edge, and adjustable for the purpose of increasing or diminishing the cut; one to Mayfield, for a grinding mill, adapted for general use among farmers, consisting of a cylinder provided with knives or plane bits set in longitudinal grooves; one to J. W. Smith, for the purpose of preparing wheat for grinding, in which a cylinder is employed similar to that of the Mayfield patent, with a series of plane bits projecting from the periphery, and adjustably bolted to the cylinder; and one to Rudy, for an improvement in clay pulverizers, consisting of the pulverizing roller in combination with separate concave springs or an elastic bed for supporting the clay while the roller revolves therein. In this last machine, the clay falls through a sieve, and descends to a second cylinder, and then to a third. The rollers are fluted, and cast in a series of sections. Of the Rudy patent, the court said that the process employed was rather a grinding than a disintegrating process, and that such a machine would be inoperative, except, perhaps, where the clay was dry and of light consistency, and that the cylinder evidently operated upon a wholly different principle from that of the Potts patents. In addition to these, the court considered two patents for improvements in the making of bricks,—one a patent to Alexander, wherein the clay was passed between double spiral-toothed grinding and crushing rollers, and then between plain cylindrical rollers; and one to Alsip and Drake, which had a fluted or corrugated cylinder in combination with a smooth-faced companion cylinder, between which the clay was passed and crushed. Other patents for straw cutters, machines for pressing tobacco, pulp engines, peat machines, feed boxes for roller mills, and machines for removing hair from hides were before the court, and also a machine known as the "Creager Wood-Polishing Machine," having a cylinder provided on its periphery with a series of projecting strips or bars of glass, not differing materially in form from plaintiff's scrapers, and like them fitted into longitudinal grooves. The machine was used for polishing boards, which were run between the cylinder and a support and pressure roller journaled underneath, and connected with an automatic adjustable contrivance. The court said that, if the Creager machine had been used for an analogous purpose, it would evidently have been an anticipation of the Potts cylinder, since the substitution of steel for glass strips would not, of itself, have involved invention. The court then considered how far there might be the exercise of the faculty of invention in the transfer from one art to another of a device for accomplishing a different purpose, and held that such a transfer might involve invention where the arts were not analogous or nearly related, the question being more or less dependent on the amount of change required to adapt the device, as found in the one art to the other. Mr. Justice Brown states the conclusion of the court as follows: "As a result of the authorities upon this subject, it may be said that, if the new use be so nearly analogous to the former

one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may, at least, involve an exercise of the inventive faculty. Much, however, must still depend upon the nature of the changes required to adapt the device to its new use. Applying this test to the case under consideration, it is manifest that, if the change from the glass bars of the Creager wood exhibit to the steel bars of the Potts cylinder was a mere change of material for the more perfect accomplishment of the same work, it would * * * not involve invention. But not only did the glass bars prove so brittle in their use for polishing wood that they broke and were discarded after half an hour's trial, but they would undoubtedly have been wholly worthless for the new use for which the Pottses required them. Not only did they discard the glass bars, and substitute others of steel, but they substituted them for a purpose wholly different from that for which they had been employed. Under such circumstances, we have repeatedly held that a change of material was invention. * * * None of the cylinders to which our attention has been called resembled the Potts cylinder so closely as does this. None of them were used for the purpose of disintegrating, as distinguished from crushing or grinding, clay. The result appears to have been a new and valuable one; so much so that, within a short time thereafter, defendants themselves obtained a patent upon a machine of their own to accomplish it."

The court then proceeds to the question of infringement, and holds that the operation of the defendants' machine is the same as that accomplished by the Potts machine, and that it accomplishes the same results. The court, in support of its conclusion as to the operation of the patented device, quotes from the trade circular of the defendants, advertising their own machine, as follows: "Unlike the ordinary roller process, the action of the disintegrator is to remove small portions, by cutting from the clay fed into the hopper on the same principle as shaving and whittling, and does not roll the clay into sheets, thus making it unfit for proper manipulation. The past season we have put out many of these machines in difficult clays, and made it an obligation to work the clay, both wet and dry, and each machine has done its work well, and to the entire satisfaction of the purchasers."

The defendants, on rehearing, introduced a good many other patents prior to the complainant. One was issued to Thomas Mills and George Mills, for granulating or disintegrating the kernels of cocoanuts and other like substances, by the combined action of a toothed cylinder, a grooved plate, and a toothed roller. The kernels of the cocoanut are fed first to the feed roller, which in turn feeds them and maintains them in contact with the teeth of the cylinder, holding them in position to be acted on by the teeth of the cylinder, and the combined action carries them forward, to be acted on by the teeth of the cylinder against the grooves of the plate. Another is the Gregg patent, of 1879, for an improvement in disintegrating devices for pulverizing clay for brickmaking. The apparatus consists of a pair of crushing rollers, combined with a rotating brush or shaft armed with a series of flexible blades, which is placed beneath the rollers so as to act upon the clay passing between them as set forth. The roller shown in the drawing is tapered or conical, and smooth, but the specifications state that cylindrical rollers may be employed. The rotating brush consisted of a series of elastic metallic blades or beaters, secured radially, and mounted immediately beneath the line of contact of the rollers, and is rapidly rotated by means of the gearing apparatus. The specifications say that the action of the rapidly rotating brush blades upon the clay, which falls upon them from the rollers above, completes and perfects the crushing operation, breaking up the bands and strips which may be produced by the rollers when the clay is plastic, and reducing it to a thoroughly comminuted state. The evidence of complainant's witnesses was that the wet clay would soon clog up the rotating brush, and that it would then become only a smooth roller. It was further in evidence that the machine never was operated, and that the patent for it was sold, with many other patents, at auction, for $25. The Dodson patent, for a disintegrating machine, was also produced at the rehearing. It was issued in 1883, and showed a rotary part and a fixed abutment, consisting of sections between which the material to be disintegrated was operated upon. The rotary part had V-shaped circumferential ribs or

projections, and the abutment had corresponding V-shaped grooves. The material was subjected to the crushing or disintegrating action of the movement of the rotary part in the abutment. The patent suggests that, by adjusting the abutment, the degree of fineness of disintegration could be varied. This patent is not shown to have ever been used in the trade.

The Newell patent, also introduced at the rehearing, issued in 1878, for a certain new and useful improvement in grinding mills, consisted of two rollers, running together at different speeds, so that the grinding was effected by the material passing between them, and at a speed at least equal to that of the more slowly moving roller, in order that the material could not be heated by the mill becoming choked. Each cylinder had a series of angular rings on its surface, which rings had shallow teeth, meshing with the teeth of the opposing cylinder. The cylinders revolved at different speeds. The triangular teeth or corresponding cavities tapered in depth and width from the base outward, the intention being to hold the material with the slow roller, and to cut and crush it with the fast one, without having the cavity that forms the tooth or detent large enough to permit the material to escape unground in its passage between the rotating rollers.

In addition to these patents, evidence was introduced of prior uses of clay disintegrators, one known as the "Moore Disintegrator," which was used at Elizabethport, N. J., in 1878, and for five years thereafter. It was provided with two sectional rolls of equal size. Each section had a set of teeth along its entire circumference, equidistant from the sides, and had also a smooth surface. The width of the teeth was one-half the width of the section, the remaining portion of which constituted the smooth surface. The teeth of each roll meshed against the smooth surface of the other roll, leaving a space of three-eighths of an inch between the smooth surface and the end of the teeth. One of these rolls was made smaller than the other, in order to obtain a differential speed. As the clay passed through the machine, it was cut in shreds about an inch wide and three-eighths of an inch thick, and about two inches long. The clay then went through a pug mill into the brick machine. The same witness (Rossi) testifies to the use of a disintegrator which he himself constructed. There was in his factory a pair of smooth rollers to grind the clay, through which the lumps did not feed well. The witness ordered grooves to be cut on each roller, and inserted steel bars, so that, as they struck the lumps of clay, they kept them from sliding back. The grooves were cut so that the bars were extended spirally across the face of the roller. The clay is said to have been cut into shreds, and from the rolls it went into the pug mill. It was used for about six months, and was then sold at auction for old iron. The difference in revolution between the wheels in the Moore and the Rossi machines was as 75 to 90 per minute. It further appeared that the machine was used to break up the large clods or lumps before putting the clay into the soak pit, where it was left to absorb water and disintegrate, after which it was run through smooth rolls to separate or crush the stones, then through a pug mill, and thence to a brick machine. It appeared that the machine was discarded, and another machine substituted. The same witness testified to another machine for disintegrating, built in 1881, called the "Watson Machine." It differed from the Moore machine in that the teeth were round, and set in rows projecting about an inch beyond the face of the roll, the rows on one roll working between the rows of its companion roll, the cylinder between the rows forming the abutment. The witness stated that after the clay was passed through the Watson machine it was run through a pair of small rolls, then through a pug machine, and then into the brick machine; that one of the rolls was made to run only 75 revolutions in a minute, and the other about 90; and that the machine was discarded, and replaced by other machines.

Another alleged prior use is what is known as the "Archenbroon Apple Grinder." It does not differ from the Butterworth apple grinder, a patent for which was before the supreme court in the original case. It is said that the Archenbroon machine suggested to one John S. Smith the construction of the clay disintegrator, on the principle of the apple grinder. Application was made for a patent by Smith, which was declared to be in interference with the Potts application. The Potts firm bought Smith's interest for $300, and obtained from him a concession of priority, and the interference proceedings were dismissed. It appears that, in the practical operation of Potts' second

patent, the revolutions of the smooth roller are about 200 a minute, and of the grooved roller are 750 a minute.

W. H. H. Miller and Chester Bradford, for appellant.

Edward Boyd and E. E. Wood, for appellees.

Before TAFT and LURTON, Circuit Judges, and THOMPSON, District Judge.

TAFT, Circuit Judge (after stating the facts). Judge Sage held that the prior uses and the patents introduced in the supplementary proceedings, which were not before the supreme court, showed that the clay disintegrator, like that of the Potts machine, could not be a pioneer invention, because the disintegration of clay, as distinguished from crushing it and pulverizing it, was not a new result. He found in the opinion of the supreme court ground for the inference that the conclusions of the supreme court as to the validity of the Potts patent were based on the assumption that it effected wholly a new result in the art of the treatment of clay for the manufacture of brick, and as the new evidence, in his view, showed that the disintegration was an old result, or, at least, had been accomplished in prior machines, patented and unpatented, the discovery of the roller of Potts, in his first machine, did not involve the exercise of invention. No new evidence was introduced upon the subject of infringement, and we may assume from the decision of the supreme court, as well as from the evidence before us, that the defendants' machine is so like the plaintiff's that the only question now presented to us is of the validity of the complainant's patent. The supplemental record disclosed a great many more machines than were before the supreme court, for crushing, pulverization, and disintegration of clay in its preparation for the brick machine. But we do not find from the evidence that the operation of any of these machines for the disintegration of clay was so successful as to lead to their general adoption by the trade, or to work a change in the older and more laborious methods in preparing clay for brick machines, graphically described by Mr. Justice Brown in his opinion. It is clearly established by the evidence that the Potts machine is a success. Nearly all the witnesses who testified to the contrary are prejudiced by their general interest in the litigation, and, as infringers of complainant's patents, are contradicted by their conduct. The weight of such evidence, moreover, is much impaired by the trade circulars issued by the defendants, showing the success of machines which infringe and resemble, in every way, the Potts machine. The operation of the Potts machine described by Mr. Justice Brown shows that it embraces the rapid revolution of the cylinder with longitudinal blades upon it, arranged with reference to the mass of clay to be disintegrated, so that the knives upon the surface of the cylinder shall strike with hard blows the mass of clay, and clip off or tear off from the mass presented to the cylinder bits of the clay, and carry them into a receptacle below. In the first patent the element which fed the clay to the cylinder was a vibrating plate. In the second patent a slow-moving, smooth roll was substituted for the vibrating plate, and this smooth roll slowly moved and fed the clay to be struck by

the knives upon the rapidly revolving cylinder. Now, it may be that the other machines called "disintegrators" accomplish the same result, but they accomplish it by the use of two cylinders, each armed with cutting, crushing, or disintegrating projections, which intermesh, and which effect the disintegration in the same general method as crushing is effected by smooth rollers. The speeds with which the two rollers are operated differ but little in the Moore, Rossi, and Watson machines, and, while they may have effected disintegration, they certainly did not do it in the same way and upon the same principle as that seen and employed in the Potts devices. Conceding that disintegration of the clay, sufficiently complete to introduce it at once into the pugging mill or the brick machine without having recourse to the soak pit, was accomplished before the Potts invention, we are nevertheless of opinion that the operation of the Potts device is so different from that of the prior devices, and is so much more efficient than they are shown to be, that it is still entitled to the reward of a limited monopoly. It is difficult at first to distinguish between the pulverizing and crushing operation and that of disintegrating. In a wide sense, "disintegration" necessarily takes place in the operation of crushing and pulverizing. The supreme court uses the term, however, in the sense of tearing apart, piece by piece, or shredding. In no clay machine but the Potts do we find this kind of disintegration. It is true that the Moore, Rossi, and Watson machines are described as shredding the clay, but, on cross-examination, it was made quite apparent that the machines as operated would not tear the clay piece by piece, for the differential speed of the two rollers was not great enough for this. Moreover, the product was afterwards subjected to the "soak pit," an indication that the clay was not in the desired condition, for it was to make the soak pit unnecessary that the Potts machine was invented. We do not think that the disintegration of apples or of cocoanut kernels is so analogous to the disintegration of wet clay that the ingenuity shown in the adoption of the device for disintegrating clay can be minimized by reference to these other arts. We are justified in this conclusion by the fact that the supreme court did not find that the Butterworth patent, for disintegrating apples, which was quite as near in operation and principle to the Potts device as either the Mills or the Archenbroon mill, was a reason for depriving Potts of the right to a patent. The Gregg patent, it is quite clear, was impracticable, and, though it professes to comminute the clay, it is shown by the evidence to have probably been a complete failure, and never to have gone into use at all. The Dodson patent was an instance of the intermeshing of projections on the surface of an abutment with corresponding projections on the surface of a cylinder. It is not shown to have produced disintegration of the clay, and is one of those wrecks and failures of inventive genius that are constantly found lining the path of the successful inventor, who takes the last step which wins.

We think Judge Sage erred in his conclusion that the supreme court's decision rested wholly on the pioneer or primary character of the Potts machine in accomplishing an entirely new result, and, even if that were the ground of the decision, it does not at all follow

that the supreme court would not have reached the same conclusion, because of the difference in the means or method employed, and greater efficiency thereby secured, in the Potts machine over any shown in the preceding art. If, as contended by counsel for defendants, the Newell machine will disintegrate clay better with its intermeshing surfaces on the face of two rollers than the Potts machine, the defendants have the right to use the Newell machine.

In reaching our conclusions of fact in this case, we have not been unmindful of the abuses which the strict rules enforced in the allowing of the rehearings were adopted to prevent. Where an elaborate opinion of the court of last resort upon the evidence is published, and the weaknesses of the losing side are clearly brought out, and the defeated party is thereafter given an opportunity to strengthen the defects of his case by evidence as to transactions long past and machinery long since cast into the scrap heap, there is great danger that the exigencies of the case may lead witnesses to round out evidence beyond that which exact truth would permit. Such evidence must be taken with great caution, and weighed in the light of this danger.

Objection is made by the defendants that the sixth claim of the complainant's patent is simply for a cylinder with longitudinal grooves and scraping bars, adjustably secured in a groove, and that the other elements shown in the patent cannot be read into it in order to make it a combination patent. We understand the supreme court in its decision to have treated this as a combination claim, or, at least, to have held that it was for the element in the clay-disintegrating machine to be used in combination with the opposing and other elements necessary to secure disintegration of the clay by the methods specified in the patent. The supreme court intimates in its opinion that the substitution for the vibrating plate of a smooth roller did not involve invention, and therefore the second patent was not valid as an improvement over the first. It supports, however, the validity of the first patent, and the sixth claim thereof, as for the element in a disintegrating machine of the cylinder, constructed according to the claim, in combination with a vibrating plate or the equivalent thereof, which shall feed the mass of clay to the armed cylinder, and hold it to be clipped off or disintegrated, piece by piece, by the rapid revolution of the cylinder. It is impossible, therefore, to determine the validity of the claim in the light of the prior art, without considering the other parts of the old machines with which the alleged anticipatory cylinder co-operates in them. We have therefore felt justified, as the supreme court did, in looking at the combination in each of the old patents, to determine whether the revolving cylinder, with its peculiar functions, in the Potts patent, had been anticipated. We hold, therefore, that the first Potts patent is valid and is infringed, but that the second Potts patent is invalid, because it shows no patentable improvement over the first. Other questions have been made by appellant, but, in view of our conclusion, it is not necessary for us to consider them. The decree of the circuit court is affirmed in so far as it dismisses the bill on the second Potts patent, and is reversed in so far as it dismisses the bill

on the first Potts patent, with directions to enter a decree finding the validity of the first Potts patent, and ordering a reference for damages. The costs of appeal are taxed against the appellees.