POTTS et al. v. PENFIELD et al.

(Circuit Court, N. D. Ohio, E. D. May 31, 1901.)

No. 5,371.

PATENTS—ANTICIPATION—CLAY DISINTEGRATOR.
The Potts patent, No. 322,393, for a clay disintegrator, considered with reference to an alleged anticipation, and *held* not anticipated.

In Equity. Suit for infringement of patent. Finding for defendants, without opinion filed. On petition for rehearing.

Hadden & Parks Bros. and Chester Bradford, for complainants. Wood & Wood, for defendants.

WING, District Judge. A petition is presented by the defendants for a rehearing of this cause, and for leave to amend the answer for the purpose of introducing newly-discovered evidence, which, it is contended, invalidates the patent in suit. At the hearing the defendants presented a drawing of a device claimed to have been used in the treatment of clays prior to the date of the invention of the complainants. This device consists of a hopper, the lower part of one side of which is formed by two smooth rolls. Near the bottom of this hopper, and contiguous to the two rolls mentioned, is a fluted parallelopiped, on bearings, adapted to be revolved. The defendants describe this last element of the device as a segmental cylinder having four steel knives or bars, marked "a," which are inserted in longitudinal grooves, and bolted therein. For convenience, we will adopt the designation of the defendants. The bottom of the hopper, opposite to the two smooth rolls, is inclined. It is called in the drawing an "apron." In operation, the clay, in its crude state, is fed into the top of the hopper. By gravity it falls to the bottom of the hopper, which is a point below the plane of contact of the two smooth cylinders, and below the cylinder, "a." The smooth rolls are placed one above the other. The upper roll is designated as "b," and the lower roll as "c." They are adapted to receive clay which may be forced between them by the segmental cylinder, "a." The witness Graves, in his testimony, says, with respect to this device, as follows:

"Previous to introducing the steel blade into that pulverizer, we had used the plain roll since 1856, and this cast-iron shaft or roll, into which I introduced the steel knives, would wear very fast, and we would have to renew that roll sometimes twice a year. In 1875 we built a new machine, and, after running it several months, we found this cast-iron roll very badly worn, but too good to throw away, and I thought it would be a good plan to introduce steel bars, about 1½ inches wide by $5/16$ thick, of hard spring steel. We planed out a channel longitudinally in this roll, and inserted the steel, so that the edge of it would be exposed to and come in contact with the clay, the object at that time being to reduce the expense of repairing the roll or renewing the roll. We erected the machine in 1875, and I am almost positive that this was done early in 1876, and not later than 1877. On different machines and different kinds of clay we give it various speeds, ranging from 32 revolutions per minute to 225. Almost universally the main rolls run 225 revolutions per minute. The function of that roll armed with steel knives or plates is to pulverize, break up, and feed the clay; the large rolls, with a uniform, or nearly uniform grade of clay as to fineness, and to regulate the flow of clay to the main rolls, which reduce the clay to the desired fineness to pass through screens."

It appears, then, from this statement, that the segmental cylinder, "a," was originally a smooth cylinder. It was not in such relation to the inclined bottom of the hopper, nor to either of the smooth rolls, "b" or "c," as to be serviceable in compressing the clay. By its revolution, when in that form, it might crush the larger lumps, and, by friction, move the clay in the hopper in the direction of the two rolls, "b" and "c." It having been found by the operator that this cast-iron shaft or roll would "wear very fast," so that it required renewal, the steel bars were introduced, as they now appear in the drawing.

This was done by planing channels in the old roll, and by inserting steel knives so that their edges would be exposed to, and come in contact with, the clay. When, in this changed form, the cylinder bearing the knives was revolved, its function, as stated by the witness Graves, was "to pulverize, break up, and feed the clay, * * * and to regulate the flow of clay to the main rolls, which reduced the clay to the desired fineness to pass through screens." It appears to me that in either the original or changed form the only function of the cylinder, "a," was to break up larger masses or lumps of clay, and act as a feeder to the rolls, "b" and "c." In the complainants' device, gravity serves to feed the clay between the plate, "d," and the cylinder, "a." Gravity would not perform this service in the device described by Graves. The device was not adapted to disintegrate the clay in the sense in which that term is used in complainants' patent, or in the way in which that function is performed by the complainants' device.

It is urged by counsel for the defendants in argument that the existence of this device prior to the date of the complainants' invention should serve to limit the scope of the complainants' patent, since the supreme court of the United States, in its decision with respect to this patent in C. & A. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, imputed to Potts the character of pioneer inventor in this class of machines. This contention might be important upon the question of infringement, but it is not to be considered upon the issue of invention.

In view of the numerous and favorable decisions, the complainants' patent must be held to be valid, except there is shown plainly, by the evidence now sought to be introduced, that the device described by the witness Graves, and used by him, was an anticipation. I find that the device, the existence of which is sought to be introduced as newly-discovered evidence, was not an anticipation. It is not as nearly like the invention of the complainants as many of the devices described and shown by the defendants in the course of previous litigation. The petition of the defendants is denied.