PENFIELD et al. v. C. & A. POTTS & CO.

(Circuit Court of Appeals, Sixth Circuit.    November 3, 1903.)

No. 1,179.

1. JUDGMENT—RES JUDICATA—CONCLUSIVENESS OF DECREE AS TO PERSONS JOINING IN DEFENSE.

Where the defendants in a number of separate suits for infringement of the same patent joined in defending each suit, contributing equally to the expense, and stipulating with the plaintiff that all evidence taken should be used in all the cases, which fact was known to the plaintiff, all such defendants are concluded by the final decree first rendered in any one of the cases as to issues which are identical and are to be determined on the same evidence; and, estoppel by judgment or decree being mutual, the plaintiff is likewise concluded to the same extent in all the cases.

2. SAME—PLEADING IN BAR—EFFECT OF PREVIOUS ENTRY OF INTERLOCUTORY DECREE.

The fact that a decree which constituted an adjudication as between the parties to a second suit did not become final until after an interlocutory decree had been entered in the second suit does not affect it as a bar when presented before the final decree therein.

3. SAME—LACHES.

A party is not chargeable with laches in presenting a prior adjudication as a bar, where it was set up by a petition filed before final decree, and within a month after the dismissal by the Supreme Court of a petition for a writ of certiorari to review the decree so pleaded.

4. PATENTS—CONSTRUCTION OF CLAIMS—ENLARGEMENT BY SPECIFICATION.

Elements of a combination described in the specification of a patent and covered by some of the claims, but not mentioned in a particular claim, cannot be read into such claim for the purpose of increasing the damages recoverable for its infringement.

5. SAME—INFRINGEMENT—PROFITS RECOVERABLE.

If an infringing machine has a special value for certain classes of work because of a single part, which alone constitutes the infringement, and no machine without such element could meet the demand for those to be used for that class of work, the patentee is entitled to recover the entire profit realized by the infringer from the sale of machines to meet that special market, but he is not entitled to recover the entire profit made from the sale of the machines for other classes of work for which other and noninfringing machines are also adapted and salable.

6. SAME—CLAY DISINTEGRATORS.

The Potts patent, No. 332,393, for improvements in clay disintegrators, claim 6, which covers "in a clay disintegrator the combination, with cylinder, A, having a series of longitudinal grooves, of the scraping bars, c, adjustably secured in said grooves, for the purposes specified," is valid, but covers only the cylinder described, with its cutting bars, when used in combination with any other elements necessary to secure the disintegration of clay by the cutting or shredding function of the patented cylinder; but such other elements, although described in the specification and included in other claims, cannot be read into such claim for the purpose of affecting the question of infringement or the damages recoverable therefor.    Such claim also *held* infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

See 109 Fed. 323.

This is a bill to restrain infringement of letters patent No. 332,393, granted C. and A. Potts, July 14, 1885, and letters patent, No. 369,898, granted to same

¶ 5. Accounting by infringer of patent for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.

parties August 23, 1897. Both patents are for improvements in clay disinte-- grators.

The specifications of patent No. 322,393, so far as deemed useful to a consideration of the questions to be decided, are as follows:

"Our invention relates to an improved machine for finely dividing and tempering clay.

"The object of our improvement is to disintegrate the clay by means of a revolving cylinder, which shall remove successive portions from a mass of clay which is automatically pressed against the cylinder, as hereinafter fully described.

"Fig. 4 of the drawing best shows the invention, and is here set out.

"A is a cylinder mounted on a shaft, b, having suitable bearings on the frame, B. Said cylinder is of such length as to nearly fill the space between the sides of the frame. A series of steel bars, cc, are fitted into longitudinal grooves in the periphery of the cylinder, where they are secured by flush screws at each end, or other suitable means, whereby they are adjusted so as to present a sharp corner, d, Fig. 1, projecting above the surface of the cylinder. Opposite cylinder A a strong plate, D, is mounted on a shaft e, so as to swing in bearings on the frame, B. The central part, f, of said plate is cylindrical in outline, the upper portion, g, presents a straight surface, and the lower portion, h, presents to the cylinder a curved surface corresponding to the periphery of the cylinder. Plate D is caused to oscillate in its bearings by means of an eccentric wheel, i, on a shaft, j, mounted in suitable bearings on the frame, and connected by a yoke, k, with an arm, l, secured to shaft e. Motion is given to shaft b by a belt running over driving pulley, m, and shaft j is revolved by means of friction gearing, consisting of a wheel, n, secured to a shaft, b, a wheel, o, secured to shaft j, and an intermediate wheel, p, mounted on a short shaft having bearings in a swinging adjustable frame, r. The opposed sides of cylinder A, and the upper and central portions of plate D, form, together with sheet-metal end plates, ss, which are secured to the frame, a trough, one side of which approaches and recedes from the other at intervals, and which has at the bottom a narrow opening, t, of constant width.

"The operation of our machine is as follows: Plate D being swung back to the position shown in dotted lines, Fig. 4, the moist, untempered clay is thrown into the trough above mentioned. Cylinder A revolving rapidly, successive portions are removed from the mass of clay and carried through the opening, t, by the scraping bars, c, at the same time the upper portion of the plate, D, moves slowly toward the cylinder, thus keeping the mass of clay in close contact with the cylinder as successive portions are removed. The force with which plate D is removed toward the cylinder is regulated by drawing the intermediate friction wheel, p, more or less closely in contact with the wheels n and o by means of the screw-nut, u, thus lengthening or-

shortening the framer, r, the purpose being to cause enough friction between the wheels to move plate D sufficiently to keep the clay in contact with the cylinder, and also to slip when necessary to prevent undue pressure against the cylinder. The finely divided clay, after passing through opening t, falls upon the lower curved portion of plate D, and from thence to the incline w. If the clay is quite moist, some of it will adhere to the curved portion of the plate, and will again be brought in contact with the cylinder as the upper portion of the plate recedes to receive a new supply of clay, and will thus be removed.

"It is desirable at times, in disintegrating dry or nearly dry clay or other like substance, to feed the mass to the cylinder without great pressure. For this purpose we disconnect the yoke, k, and arm, l, and throw wheel p out of engagement with the wheel o. By turning wheel o by hand, plate D may now be set at a suitable angle, as that shown in dotted lines, Fig. 4, or any intermediate angle between that and the position shown in full lines, so that the mass is fed to the cylinder by force of gravitation alone."

The claims are as follows:

"(1) In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and a swinging plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay, and means for swinging said plate alternately toward and from said cylinder, all combined substantially as specified.

"(2) In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and having scraping bars attached to its periphery, and a swinging plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay, and means for swinging said plate alternately toward and from said cylinder, all combined substantially as specified.

"(3) In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and having scraping bars attached to its periphery, and an inclined plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay, all combined substantially as specified.

"(4) In a clay disintegrator, the combination, with the revolving cylinder, of the swinging plate, consisting of a central cylindrical portion, an upper straight portion, and a lower curved portion, all substantially as specified.

"(5) The combination, with the supporting frame, the revolving cylinder, and the swinging plate, of the shaft j, eccentric i, yoke k, arm l, and wheels n, o, and p, substantially as and for the purpose specified.

"(6) In a clay disintegrator, the combination, with cylinder A, having a series of longitudinal grooves, of the scraping bars, c, adjustably secured in said grooves, for the purposes specified."

Patent No. 368,898 covered a substitution of a smooth cylinder for the swinging or inclined plate of the first patent. This patent was withdrawn from the consideration of the court before a final hearing, and the cause heard only upon an alleged infringement of claims 3 and 6. These claims the court below held valid and infringed, and referred the cause to a master to report damages and profits. The master reported the net profits of defendants to be $13,964.65. Exceptions filed by both parties were overruled, the report confirmed, and a decree in accordance was allowed. From the decree only the defendants have appealed.

E. E. Wood and Edward Wetmore, for appellants.

Charles Martindale, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge (after stating the facts as above). The validity of the sixth claim of the first Potts patent was adjudged in Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275. In the opinion of that court the validity of the second Potts patent was doubted, though the point was not decided, Justice Brown saying:

"It is at least open to doubt whether, in view of the first patent, there is any novelty in substituting a smooth faced roller for the swinging plate of the first patent."

Subsequently, upon newly discovered evidence, the decree sustaining the patent was set aside, and both patents held void for want of novelty. Upon an appeal to this court we upheld the sixth claim as valid and infringed, that being the only claim of the first patent which was involved. The second Potts patent we held invalid, as anticipated by the first patent to Potts. Potts v. Creager, 97 Fed. 78, 38 C. C. A. 47.

The present suit is upon the third and sixth claims of the patent thus sustained. The evidence is identical with that upon which we heard the second appeal in Potts v. Creager, except as to the precise device alleged to be an infringement. Technically, the present appellants may not be concluded by our former decision, nor by that of the Supreme Court, because not parties or privies in the case of Potts v. Creager. But a decent respect for the stability of judicial decision, and a proper regard for the security of property in patents, requires that we shall not reverse our original holding in respect of the same patent, unless convinced of a very palpable error in law or fact. We are not convinced of error in the present case, and see no reason for disregarding the rule of stare decisis. We must therefore affirm the decree of the court below, so far as it held the sixth claim of the original Potts patent valid, leaving open only the question of infringement.

Passing for the present any question as to the scope of this claim and the question of its infringement, we shall first dispose of the appeal so far as the third claim is concerned. That claim was not directly involved in the case of Potts v. Creager, and the only bearing that the opinion of either the Supreme Court or this court has upon that claim grows out of the fact that in the Creager Case the suit was also upon the claims of the second Potts patent. The Supreme Court, as we have already stated, expressed a doubt as to whether the mere substitution of a smooth cylinder in place of the inclined or swinging plate of the first patent as the member opposite the barred cylinder of that patent embodied a patentable novelty, and this court, upon an even fuller record, expressly held that the second patent embodied "no patentable improvement over the first." Whether this conclusion was based upon a construction of the sixth claim which would entitle the patentee to the use of a smooth roller as the abutting member of a clay disintegrator coacting with the barred roller of the patent, or because a smooth roller was regarded by the court as the mechanical equivalent of the inclined or swinging plate of the first patent, or for both reasons, we need now not stop to consider. Neither is it important that we shall determine the scope of the third claim, if, as contended, the claim in the case of The Anderson Foundry & Machine Works v. Potts, 108 Fed. 379, 47 C. C. A. 409, being another suit on the same claim brought by the same patentees against a different infringer, operates to conclude the parties to this suit in so far as the same question of infringement is involved in both suits.

It is therefore proper that we shall first determine whether the question adjudged in that case is identical with the question in this case in respect of the infringement of this claim, and whether the present appellants were parties or privies to that case. After the

opinion of the Supreme Court holding the original patent to Potts valid and infringed, and pending a rehearing accorded in the Circuit Court, the complainants instituted six other suits against different parties, charging infringement. Among the new suits thus started was the present suit in the Circuit Court for the Northern District of Ohio against the present appellants. Another of these suits was that against the Anderson Foundry & Machine Works, a corporation of Indiana, which was sued in the Circuit Court for the District of Indiana (no written opinion). The defendants in these six suits agreed to make a mutual and common defense, and that each should pay one-sixth of the cost of such defense. The same counsel were employed to defend each of the cases, and Wm. C. Vanneman, the superintendent of the Anderson Foundry & Machine Works and a stockholder in said company, was selected as the common agent of all to assist counsel in the preparation of the defense. Subsequently a stipulation was entered in each of the six cases that evidence taken in any one of said causes should be, so far as relevant and competent, used in each case. Now it came to pass that the suit of Potts et al. v. The Anderson Foundry & Machine Works was finally decided in the Court of Appeals for the Seventh Circuit before a final decree in this present suit, though after an interlocutory decree upon the merits. The record in that case was identical with the record in the suit against the present appellants. But in the Indiana case only the third claim of the Potts patent was involved. The court below had found that this third claim was valid and infringed by a clay disintegrator when the inclined plate of the patent had been substituted by a plain revolving cylinder. The Court of Appeals reversed the decree, and directed that the bill be dismissed upon the ground that the state of the art was such as to restrict this claim to such narrow lines as to "make it impossible to say that the substitution of a plain revolving cylinder for the inclined plate is an infringement." The opinion of the Court of Appeals for the Seventh Circuit is reported in 108 Fed. 379, 385.

The infringing device made and sold by the appellants is a disintegrating clay machine having two opposing rollers, one of which is the cylinder of the patent, having a series of longitudinal grooves in which scraping bars are adjustably secured. The other or opposing roller is the smooth roller common to the two roller clay-crushing or pulverizing machines of the old art. Thus the question in respect of the infringement of the third claim was in each of these two cases identical, and, if the appellants were privies with the Anderson Machine Company in such sense that they would have been concluded by a decree determining a question litigated upon the same evidence in each case, it must follow, from the mutuality of an estoppel, that the patentees who were plaintiffs in both cases would be also concluded, for an estoppel by judgment or decree must be mutual. The appellants, not having been parties of record to the Indiana case, can only rely upon the decree in that case by showing that they in fact defended that suit in their own interest, and that it was done openly, or otherwise that it was done with the knowledge of the appellees who were the opposite parties. That the appellants did join

with the Indiana defendant and others in the defense of that case, we think is made out plainly, and that their conduct in defending that case, as well as the other suits upon the same patent, was well known to the opposite party who were plaintiffs in that suit as well as in this, is not denied. The doctrine is well settled that one who for his own interest joins in the defense of a suit to which he is not a party of record is as much concluded by the judgment as if he had been a party thereto, provided his conduct in that respect was open and avowed or otherwise well known to the opposite party. The question has once before been before this court in Lane v. Welds, 39 C. C. A. 528, 99 Fed. 286, where the cases are collected. An estoppel by decree exists, although the demand in the two cases is not the same, whenever the question upon which the recovery in the second case depends has been before decided, under like conditions, between the same parties or those in privity with them. Southern Pac. R. Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355.

We now come to a consideration of the objections presented by the appellees to this defense. First, it is said that by the delay in bringing forward this estoppel the appellants have waived any right to rely upon it. This defense was not presented to the court below until April 9, 1902, which was more than a year after an interlocutory decree holding that the third claim was valid and infringed. In the meantime the case had been pending before the master upon the account for profits. But this delay is in part accounted for by the fact that the decree of the Seventh Circuit Court of Appeals reversing the decree of the Indiana Circuit Court was not made the decree of the latter court until June, 1901, and was therefore not available as an estoppel when this case was heard upon the merits in the court below, which was in July, 1900. The fact that that decree did not become final until after the interlocutory decree in this case does not affect it as a bar when presented before the final decree. David Bradley Co. v. Eagle Mfg. Co., 57 Fed. 980, 6 C. C. A. 661. The only delay in asking a rehearing and leave to set up the decree of the Indiana court as an estoppel was from June, 1901, to April, 1902. But this is in part also accounted for by the fact that the complainants notified the defendants of their purpose to apply to the Supreme Court to review the holding of the Seventh Circuit Court of Appeals, upon the ground that the decision of that court was in conflict with the decision of the Supreme Court in Potts v. Creager, as well as the decision of the Circuit Court of Appeals for the Sixth Circuit in the same case upon a second appeal. In accordance with this notice, a petition for a writ of certiorari was filed February 4, 1902, and denied March 10, 1902. That the matter was not presented by the petition for a rehearing filed January 25, 1901 (C. C.) 109 Fed. 323, was due to the fact that the opinion of the Seventh Circuit Court of Appeals had not then been handed down. It is then said that this prior application for a rehearing was not actually heard until May 6, 1901, and that appellants then knew of the opinion of the Circuit Court of Appeals and used it in support of an argument for a rehearing, though not as a bar. But while the opinion

was at that time ripe for use as a persuasive argument to induce the Circuit Court to reverse its own holding while it had yet control of the case, the decree of that court had not then ripened into an estoppel such as was at that hearing admissible, even if it could have been otherwise available under a petition which made no reference to it nor prayed any relief based upon the estoppel. This matter of estoppel was afterward properly presented by another petition filed while the decree below was yet interlocutory, and therefore subject to the control of the court. The complainants answered, and the defendants replied to the answer. Certain affidavits, stipulations, and records were filed, and treated by both parties as evidence bearing upon the issues made by the petition and answer, and upon the issues thus made up, and the evidence thus presented, without objection, the court below denied the relief prayed. To this exception was taken, and error has been assigned. The answer to this petition did not deny the privity of the present appellants with the defendant company in the Indiana suit, nor the knowledge of the plaintiffs in that case that the defendants herein had made a common defense in the Indiana case

In addition to this matter of delay in the presentation of this estoppel, which has already been disposed of, the complainants alleged that the appellants and the other defendants to the new suits, brought after the decision of Potts v. Creager in the Supreme Court, had joined the Creagers, and in their own interest had made a common defense in the proceedings which were had in that case upon the rehearing in the Circuit Court and in the second appeal from the decree of that court, and were therefore concluded by all that was adjudged in that case. We are not satisfied that the evidence sustains the contention in this regard. It is true that the counsel defending the Creager suit were the same employed by the defendants in the six new suits brought after the opinion of the Supreme Court in Potts v. Creager. It is also true that a stipulation was entered in Potts v. Creager, while pending upon the rehearing, that evidence taken in each of the new cases might be filed and used in that case. But this stipulation was of February 25, 1896. A like stipulation was filed that either party in the new suits might use the record in the case of Potts v. Creager in the Supreme Court as if the depositions had been taken in such case. But the evidence shows that the defendants in the new suits conferred together in March, 1895, and agreed then to make a common defense in each of the said suits, and that, while there were only five of such defendants at the conference in March, the Michigan Brick & Tile Machine Works subsequently joined and contributed to the cost of each defense. The affidavits of both Mr. E. E. Wood and Mr. W. C. Vanneman are very convincing that this agreement to make a common defense of each suit did not include the Creager Case. There was good reason for the refusal of the new defendants to put themselves in the situation of the Creagers, who had at the time of the institution of the later suits been already badly winged, as they would be affected by the decree and opinion of the Supreme Court to a far greater degree than would be the case with those only sued after that case had been

126 F.—31

thus decided. To make these new defendants privy to a case in the plight of Potts v. Creager would have been most inconsiderate. The evidence of Mr. Vanneman touching the parties to the agreement for a common defense is misinterpreted by counsel for appellees. His deposition was taken in one of the six new suits, and although it, along with every other piece of evidence, was stipulated into the Creager rehearing case, yet it is plain that he was referring to the defendants in the new suits as "the defendants in this litigation," who were making a common defense, and had no reference to the Creagers. That complainants have not regarded it as having that effect is inferable from the fact that they do not seem to have relied upon it as a bar in this case until pressed for some answer to the estoppel pleaded against them, nor at any time in the Indiana case, which was not decided until long after the decision in Potts v. Creager.

But aside from this failure to show a state of facts which would affect the appellants by the estoppel of a decree, it is not evident that anything adjudged in the Creager Case would operate as a bar in the matter of the infringement of the third claim of the first Potts patent. That claim was not involved in that suit. Whatever the influence of the opinion of the Supreme Court and of this court upon the question of infringement of the claim now under discussion arises from the doctrine of stare decisis, and not that of estoppel by judgment. Neither the Supreme Court nor this court adjudged that a revolving smooth cylinder was the equivalent of the vibrating plate of the third and other claims of the Potts patent. That case involved only the sixth claim of the first patent and certain claims of the second patent. The opinion of the court in respect to the general scope of the first patent may have much influence upon a future question as to the broadness or narrowness of the third claim, but only the decree operates as an estoppel, and that adjudged nothing in respect of the third claim of the patent. We conclude, therefore, that the appellants are not affected by any estoppel by decree in Potts v. Creager, but that, being privies to the case of the Anderson Machine & Foundry Works, they and the appellees are concluded by the decree in that case so far as it adjudged the third claim not to be infringed by a smooth revolving roller coacting with the barred roller of the third claim of the patent, the smooth roller not being the mechanical equivalent of the inclined plate of the third claim. This is the full extent of the estoppel of that decree. It follows that the court below should have opened up the decree so as to give effect to this estoppel, and that the decree, so far as it holds that the third claim was infringed, is modified accordingly.

The account was taken under an interlocutory decree finding that the third as well as the sixth claim was infringed, and the master's report makes no distinction between those two claims. His report also shows that he proceeded upon a construction of the order of reference and opinion of the court below which required him to regard the entire profit arising from the sale of every machine made or sold by the defendants as profit to be accounted for without regard to the question as to whether such profit was wholly due to the patented feature of the device. He also reports that this view was

taken of the order of reference and opinion by the counsel for the patentees, and that they introduced no proof "upon which any apportionment of profits could be made between the patented and the alleged unpatented features of the infringing machine."

In view of the conclusion we have reached in respect of the effect of the Indiana decree in estopping the complainants from alleging infringement of the third claim, it will be necessary to recommit the report for an accounting in respect of an infringement of the sixth claim alone, unless the contention of the patentees, now urged, is sound, namely, that the sixth claim is broad enough to cover every feature of an organized clay disintegrator in which is found the barred cylinder· of the patent. In this event the patentees claim that they would be entitled to recover the entire profit from the sale of every such machine, irrespective of any infringement of the third claim. For convenience of reference we reproduce this sixth claim:

"In a clay disintegrator, the combination, with cylinder A, having a series of longitudinal grooves, of the scraping bars, c, adjustably secured in said grooves, for the purpose specified."

The patentees do not claim in their specifications to have invented an entirely new machine. They state, on the contrary, that they have made "a new and useful improvement in clay disintegrators." The improvement which they claim is said to consist in "a revolving cylinder which shall remove successive portions from a mass of clay which is automatically pressed against the cylinder, as hereinafter described." Certain of the claims include particular means for holding the clay against the disintegrator or cutting bars of the revolving cylinder of the patent. Thus the third claim, which is excluded from consideration in respect to infringement by reason of the estoppel of the Indiana decree, is in these words:

"In a clay disintegrator, a supporting frame, a cylinder arranged to revolve, and having scraping bars attached to its periphery, and an inclined plate, both mounted in said frame, and forming opposite sides of a trough for the reception of clay, all combined substantially as specified."

The sixth claim, on the other hand, omits any particular means for holding the clay against the shredding bars of the cylinder of the patent. Now, we are urged to read into this claim the features of a clay disintegrator which are described in the specifications, such as the frame, the inclined or swinging plate, or the equivalent of such plate and mechanism for operating same, so that the claim when thus filled in will include all the operative parts of a clay disintegrating machine as elements. We know of no authority for reading into a claim features which have been omitted, although shown in the specifications, and none which would justify us in suffering such an enlargement of this claim for the purpose of increasing the damages justly recoverable for the infringement of the patented portions of the infringing machine. We may, beyond doubt, look to the specifications and drawings for the purpose of understanding the claims, or that we may see whether the device is useful or operative, and sometimes for the purpose of limiting a claim to the particular device described, but we may not enlarge a claim by including therein ele-

ments which are not claimed as such. In McCarty v. Lehigh Valley Railroad Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 242, 40 L. Ed. 358, the court was urged to read into a claim certain features which were described in the drawings and specifications. In dealing with this, Justice Brown said:

> "While this may be done with a view of showing the connection in which a device is used, and proving that it is an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement."

In Stearns v. Russell, 85 Fed. 218, 29 C. C. A. 121, it was sought to read into a claim the several parts of a larger combination. The claim read, "in a mechanism for dipping pills, a dipping bar," etc. Judge Taft, speaking for this court, said:

> "To imply, as elements of a claim, parts not named therein, for the purpose of limiting its scope, so that it may be accorded novelty, is contrary to a well-settled rule of the patent law."

Neither can a feature of construction or an element covered by one claim be read into another in which it is not mentioned. Wilson v. McCormick Harvesting Mach. Co., 92 Fed. 167, 34 C. C. A. 280. In Canda v. Michigan Malleable Iron Co. (C. C. A.) 124 Fed. 486, the point was made that claim 1 of the patent did not describe an operative structure, but the court, speaking by Judge Severens, said that "the claim cannot be broadened or be made to include things not therein included," "but to know what is included we may resort to the specifications for the purpose of interpreting the claim." The court did accordingly examine the specifications and drawings to see the other features with which the elements of the claim were to be associated, and, without bringing these other features into the claim or elements, we were enabled to interpret and understand the features which were included. That this claim does not include as elements in a combination all the working parts of an operative working machine is very obvious. On the other hand, the patentees have not claimed the "cylinder A" as a separate and distinct mechanism. It was taken from a remote art and adapted to use in a clay-disintegrating machine, and the patent was saved because the court thought that this new use in a different art, producing in that art a better result than any known before, involved invention. Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275.

The claim is therefore for this revolving roller with its cutting bars when found in combination with the other operative parts of a clay-disintegrating machine. Clay crushing, grinding, or pulverizing mechanism did not begin with Potts. Devices for dividing and tempering clay are as old as the art of the potter or the brickmaker. A vast number of devices were shown in Potts v. Creager and in this case. Among them were two roll devices which differ from the infringing devices solely in the fact that one of the old smooth rolls has been taken out and the barred differentially speeded roller of Potts substituted. The only feature of the infringing device which is patented is, therefore, the scraping roller of the patent, for the ap-

pellees and the public were perfectly free to use every other feature of the infringing machines. There is nothing in this conclusion contrary to the opinion of the Supreme Court in Potts v. Creager, supra, or to the opinion of this court in the same case, 97 Fed. 78, 86, 38 C. C. A. 47. Indeed, Justice Brown said, in referring to this claim, that "it covers only the cylinder." Referring to the same claim, Judge Taft, when the same case was before us, said:

"We understand the Supreme Court in its decision to have treated this as a combination claim, or, at least, to have held that it was for the element in the clay-disintegrating machine to be used in combination with the opposing and other elements necessary to secure disintegrating of the clay by the methods specified in the patent."

And so we say now, the disintegrating cylinder is only claimed when used in combination with any other elements necessary to secure the disintegration of clay by the cutting or shredding function of the patented cylinder. If the defendants did not so use this cylinder as to avail themselves of the function claimed for it in the patent, they have not infringed. If they have used it in a clay disintegrator in such connection with any form of abutting or opposing element adapted to coact with the cutting bars of the patented cylinder, they have infringed. But we are not disposed to minimize the degree of merit in this improvement made by Potts. That there are other forms of machines which were reasonably adapted for the reduction of clays of certain kinds to a suitable condition for the further operations of the potter or brickmaker we have no doubt. But we see no reason to depart from the conclusion reached upon an identical record, where Judge Taft, for this court, said:

"Conceding that disintegration of the clay, sufficiently complete to introduce it at once into the pugging mill or the brick machine without having recourse to the soak pit, was accomplished before the Potts invention, we are nevertheless of the opinion that the operation of the Potts device is so different from that of the prior devices, and is so much more efficient than they are shown to be, that it is still entitled to the reward of a limited monopoly. It is difficult at first to distinguish between the pulverizing and crushing operation and that of disintegrating. In a wide sense, 'disintegration' necessarily takes place in the operation of crushing and pulverizing. The Supreme Court uses the term, however, in the sense of tearing apart, piece by piece, or shredding. In no clay machine but the Potts do we find this kind of disintegration."

But it does not necessarily follow that, because the only part of the machine sold covered by this claim is the barred cylinder, the patentees' recovery of profits is to be confined to what can be made by the making and sale of this cylinder only. The rule was thus stated in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated."

"The patentee must," quoting from Justice Blatchford in the case below, "in every case give evidence tending to separate or apportion the defendants' profits and the patentees' damages between the patented features and the unpatented features, and such evidence must

be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." To the same effect are Reed v. Lawrence (C. C.) 29 Fed. 915, 918; Mosher v. Joyce, 51 Fed. 441, 445, 2 C. C. A. 322; Manufacturing Co. v. Cowing, 105 U. S. 253, 255, 26 L. Ed. 987; Crosby v. Consolidated Valve Co., 141 U. S. 454, 12 Sup. Ct. 49, 35 L. Ed. 809. Now, it is claimed for the patentees that they come under the second branch of the rule as stated, for the reason that the entire marketable value of the whole infringing machine is properly and legally attributable to the patented element. There was evidence clearly showing that there were devices for grinding, pulverizing, and even disintegrating clay which were valuable and marketable for use in certain kinds of clay, or clay in certain conditions, and that the profit in making and selling such machines was approximately as great as that derived from the sale of the Potts machine. But if the machine as improved by Potts had a special value by reason of its adaptability for working tenacious clays over the machines open to the infringer, and the evidence should show that no other machine was adapted to use in such clays, and that there was therefore no other machine which could meet the demand for use in that special class of clays, then, as was held in some of the cases we have cited, the patentee will be entitled to recover the entire profit which has been made by meeting that special market.

The evidence before the master was not directed to any separation of profits between those attributable to the patented and unpatented portions of the machine, nor did the master report upon the contention that the entire profit was attributable legally to the improvement of the machine by the use of the patented element of the sixth claim. Under the circumstances, justice would seem to require that the account should be recommitted, with leave to both parties to take additional evidence upon the question of profits.

Certain other questions have been made upon the report, but, as these are not likely to prove important in the further progress of the case, we forego any discussion of them.

The decree will be reversed so far as it finds infringement of any claim except the sixth, and so far as it affirmed the report of the master as to profits. In all other respects the decree is. affirmed. The costs of this court will be paid by appellees. The costs below will abide the final decree.